CURTIS v. RAILROAD COMMISSION OF
TEXAS et al.

No. 8561.

Court of Civil Appeals of Texas. Austin.

March 31, 1937.

Rehearing Denied April 21, 1937.

Hill & Bath, of Henderson, for appellant.

Wm. McCraw, Atty. Gen., and Wm. C. Davis, W. J. Holt, C. M. Kennedy, T. F. Morrow, Earl Street, and Joe Sharp, Asst. Attys. Gen., for appellees.

BAUGH, Justice.

C. W. Curtis, receiver of the Clay Refining Company, a corporation, on June 3, 1936, applied on form SW-4 to the Tender Board of the Railroad Commission for tender to move into the channels of commerce, 7,361 barrels of gasoline, 1,093 barrels of kerosene, and 2,215 barrels of fuel oil located in the East Texas field in Smith county. On June 16, 1936, a hearing was had on such application before the Tender Board, said application was rejected, and the reasons for rejection indorsed thereon. Curtis appealed from this order by filing suit in the district court of Travis county to set it aside and to enjoin any interference with the movement of these products. From a judgment of the trial court adverse to him, Curtis has appealed.

A consideration of the methods and forms used by the Railroad Commission in this phase of the administration of the ·conservation laws will, we think, be conducive to a more intelligent discussion and better understanding of the issues here involved. Pursuant to legislative authority granted to it, the Railroad Commission, in order to ascertain the legality of oil and the products thereof, prescribed, among others, what it designated as SW forms to be executed by dealers in oil. Form SW-1 relates to gathering pipe lines laid upon leases and connected with wells. Form SW-2, based upon SW-1, authorizes the applicant to take the allowable oil from such lease into the gathering system. Form SW-3, supported by SW-1 and SW-2, when approved by an agent of the Railroad Commission, authorizes the gatherer of the oil to transport same into the pipe lines for shipment out of the field, or into the local refinery for processing. Form SW-4, when approved, authorizes the movement of such products into commerce. All of these forms must be signed and sworn to by the applicant. When form SW-3 is accomplished and the

oil moved thereunder into a refinery, such refinery is given credit on the books of the Railroad Commission for the amount of oil therein designated for refining purposes. The efficiency of such refinery is ascertained by the Railroad Commission, that is, what percentage of the crude oil such refinery can reduce to gasoline, kerosene, fuel oil, etc., and the quantity of each of the products of such oil allocated to and credited on the commission's books to that .refinery for purposes of future tenders or movement into the channels of commerce. This tender, as above indicated, is authorized on form SW-4. Prior to the 10th of each month each refinery is required to execute and file with the Railroad Commission what is designated as form SW-6. This form, or report, discloses to the Railroad Commission the quantities of crude oil theretofore legally acquired and the oil and products remaining on hand in such refinery at the close of the preceding month. When this form has been accomplished, the Railroad Commission then cancels all SW-3 forms approved during the preceding month, and relies on this SW-6 report, when approved by an agent of the commission, as a basis for the issuance of tenders (SW-4) during the current month on oil and products carried over by such refinery from the preceding month.

The .application for tenders here involved was predicated upon the oil and products on hand in said refinery on May 31, 1936, as shown by its SW-6 report which had been approved by an agent of the commission. It appears that when such form SW-6 is duly executed, sworn to and filed by the refinery, if it has support in prior SW forms on file with the commission, such SW-6 report is approved and thereafter tenders, based thereon, are approved by the commission for as much as 50 per cent. of such products as such SW-6 form shows such refinery is entitled to move into commerce; but that before tenders for the remaining 50 per cent. of such products are approved the commission makes an investigation to ascertain if the facts, even though SW-6 has been approved, will support such tender. That is what occurred in the instant case. The Tender Board of the commission had received reports from the state comptroller indicating that appellant had paid taxes on larger quantities of products sold by it during April and May, 1936, than

the Railroad Commission had issued tenders for. The application made by appellant on form SW-4 on June 3, 1936, was consequently not granted, though form SW-6 approved by the agent of the commission showed he was entitled to move such quantities of products, but was set down for hearing to ascertain the facts relative thereto. At this hearing, with the report of the comptroller before the Tender Board, both Curtis and his bookkeeper, upon advice of counsel, refused to identify the SW-6 form, the only basis for the tender sought; refused to state whether Curtis had signed it, whether he had sworn to it, whether the facts stated therein were true or false, in brief, refused to give the Tender Board any information whatever whereby they could ascertain whether such SW-6 report was true or whether a tender could be based thereon. In view of this refusal, and with the report of the comptroller before them, the Tender Board rejected his application for a tender, and assigned, among others, as reasons for such rejection, the following:

"We further find that during the time applicant herein has operated the Clay Refining Company he has not reported to the Railroad Commission of Texas the true and correct amount at his refinery and disposed of, as required by the laws of the State of Texas and the rules and orders of the Railroad Commission of the State of Texas, and as a result it is impossible for the Railroad Commission of Texas at this time to accurately determine the amount of legal crude and products applicant is now entitled to have tendered.

"We further find that applicant's SW 6 tender #298E is not a true and correct report of his refinery operations and does not show a correct balance of tenderable products in applicant's possession at this time, but on the contrary shows a much larger tenderable balance than applicant is entitled to receive tenders on at this time.

"We further find that the only support offered for this tender is applicant's SW 6 report 298E purported to have been signed and sworn to by one C. W. Curtis, Receiver for Clay Refining Company. During the hearing held before the Tender Board of the Railroad Commission of the State of Texas to consider this application for tender, C. W. Curtis, Receiver for Clay Refining Company applicant herein,

failed and refused to identify his signature upon the aforementioned SW 6 report which is offered as support for this application for tender and further failed and refused to state under oath before this board that such report is a true and correct report and that such report had been signed by him and sworn to before a proper officer as required by the laws of the State of Texas and the Raiload Commission of the State of Texas.

"During the course of the hearing held before the Tender Board of the Railroad Commission of the State of Texas to consider this application for tender, applicant herein, C. W. Curtis, Receiver for the Clay Refining Company and his bookkeeper Cloy Gathright failed and refused to answer any and all questions asked of them and failed and refused to give this board and the Railroad Commission of the State of Texas any information with reference to the operation of such refinery during the period of time covered by this application for tender. Because of such failure on the part of applicant and his bookkeeper to give this information to the Railroad Commission of Texas, it is impossible at this time to determine whether or not the oil covered by this tender is such oil as is subject to be tendered by the Railroad Commission of Texas."

We have carefully reviewed the record of the evidence before the Tender Board and find that it is sufficient to support the above-quoted grounds for rejecting appellant's application for a tender. The only material difference between the evidence offered on the trial hereof, and that produced before the Tender Board, is that the bookkeeper of appellant, though he knew nothing personally about the SW-6 form in question having been employed subsequent to the date it was filed, and who had refused when a witness before the Tender Board, to identify the signature of Curtis to such report, did testify upon the trial hereof that he had since familiarized himself with Curtis' signature, and that said SW-6 form in question bore the signature of Curtis. Curtis himself did not testify, nor did he produce any books or other evidence to show that he had legal oil or legal products to support the tender applied for. Appellant takes the position that said SW-6 report, on which he relies for his right to a tender, having been approved by an agent of the Railroad Commission, thereby gave him a vested right to a tender for the full amount of products which said SW-6 report would support; that such products were thereby rendered legal and could be moved into channels of commerce even though he had been guilty of violations of the conservation laws and rules of the commission in other regards.

This position cannot, we think, be maintained. There is no express attack in appellees' pleadings upon the SW-6 report as being a forgery, or false and fraudulent; nor did the Railroad Commission expressly cancel it on these grounds. Such, however, is the effect of the findings of the Tender Board as stated in its reasons for rejection. The same rules promulgated by the commission under which the above indicated forms were prescribed, expressly provide that the commission shall have the right, upon hearing of an application for a tender, to require the applicant to produce his books, accounts, and records relative to such application, "and to reject any such application if the facts therein stated necessary to the approval of such application are found to be false or not supported by the applicant's books, records and accounts." It is further provided in said rules of the commission that where a tender is approved through fraud or mistake, it is the duty of the agent so approving it to cancel the same, in the manner and after the notice therein provided for.

Under the facts and circumstances here presented; and when the truth or falsity of said SW-6 form, relied upon by appellant as the support for the tender applied for, was called in question in a proper hearing before the Tender Board, the duty rested upon the applicant in good faith to show that the products involved were manufactured by him from legal oil. This he wholly failed to do, and refused to identify his own signature on the instrument under attack. Certainly he has not placed himself in position to complain in a court of equity. Railroad Commission v. Lacy (Tex.Civ.App.) 100 S.W.(2d) 118.

And if it be conceded that upon the trial hereof the signature of Curtis on his SW-6 form above indicated was genuine and that he had complied with the rules of the commission in that regard; there was sufficient evidence before the court for it to find that the facts (that is the quantities of oil and products reported by him as being on hand in his refinery

on May 31, 1936) therein stated were not true and correct, and therefore did not afford a proper support for the products here involved. Consequently, the judgment of the trial court will be affirmed.

Affirmed.